IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ECKAN FORBES,                                    :

        Plaintiff,                            :

                              Case No. 3:05cv0154

        vs.                                  :

                            JUDGE WALTER HERBERT RICE

INTERNATIONAL FIBER CORP.,                       :

        Defendant.                            :

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #13); JUDGMENT TO BE ENTERED IN
FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION
ENTRY

---

Plaintiff Eckan Forbes ("Plaintiff" or "Forbes"), an employee of the Defendant International Fiber Corporation ("Defendant" or "IFC") at its Urbana, Ohio, facility, injured two of his fingers when he placed his hand in a reblend hopper he was operating, on December 20, 2004, in order to clear a clog in that machine. Seeking compensation for his injuries, above and beyond the award of worker's compensation benefits that he had received, Plaintiff has brought this workplace, intentional tort action against the Defendant, based upon Blankenship v. Cincinnati Milacron Chemicals, Inc., 69 Ohio St.2d 608, 433 N.E.2d 572, cert. denied, 459 U.S. 857 (1982), and its progeny.

The facts and circumstances giving rise to this litigation are not greatly in dispute.[1]  Plaintiff began his employment with the Defendant at its Urbana facility in September, 2003, to work on the blender line.[2]  When that employment commenced, Plaintiff was given at least two weeks of training on how to operate the reblend hopper.  After he had demonstrated a sufficient proficiency on that machine, he was certified as a reblend operator.

From the beginning of his employment with the Defendant, Plaintiff operated that machinery.  Operating such a machine was a two-man job.  One operator would pour bags of product into the hopper;[3] the second would cut bags of product, stack trash and bring extra pallets of material to the reblend area.  After the product had been poured into the hopper and hit its bottom, a paddle wheel rotated the product until it was caught by air, which would force it through a pipe into the blender, where it would be mixed with cellulose to blend the material sold by the Defendant.

On December 20, 2004, Plaintiff and Larry Riddle ("Riddle") were working the 3:00 p.m. to 11:00 p.m. shift at the reblend hopper.  Although Riddle had dumped most of the bags of product into the hopper during that shift, he and Forbes switched jobs around 9:00 p.m.  Plaintiff then poured a bag of dust

---

[1]Since this case is before the Court on the Defendant's Motion for Summary Judgment (Doc. #13), this Court sets forth those facts and circumstances in the manner most favorable to the Plaintiff.

[2]At the Urbana facility, Defendant manufactures cellulose products utilized in pet food, cheese and pharmaceuticals.  The blender line is used to combine cellulose with additives to make a blended powder.  Thus, the process of the blender line is much like mixing the ingredients used to make a cake.

[3]The product being poured into the hopper could be corn starch, enzyme premix or something called dust collector, depending upon what was being manufactured.

collector, which was a light, fluffy product, into the hopper. Following his normal practice, Plaintiff poured half of the bag into the hopper and, after waiting a little while, emptied the remainder of the bag into that receptacle. When he poured the second half of the bag into the hopper, a clog occurred. Plaintiff attributed the clog to the dust collector he was pouring into the hopper, which he identified as the product most likely to clog in the hopper. According to Forbes, seven or eight out of every ten bags of dust collector poured into the hopper would cause a clog, while only three or four out of every ten bags of other materials would result in a clog. Plaintiff believed that the tendency of dust collector to clog stemmed from its lightness and concomitant inability to slide down the sides of the hopper.

The hopper was equipped with a safety grate over its open top. On December 20th, however, the grate had become jammed back, as a result of 25 or 50 pound bags of product being thrown onto it, while that product was being dumped into the hopper. As a consequence, there was a four to six inch gap between the edge of the hopper and the grate. That gap had existed for four or five months. It was sixteen inches from the top of the grate to the paddle wheel at the bottom of the hopper.

That night, the Plaintiff waited for a few moments, while the clog began to clear itself. Nevertheless, some of the dust collector remained stuck to the sides and the back of the hopper. Although in the past he had used broom handle or his hands to clear the product, he used his hands on December 20th.[4] Plaintiff stuck

---

[4]At the time of the accident involving Forbes, the Defendant had not provided its employees with a tool to clear clogs in the hopper. Although there was evidence that employees used a number of techniques to clear the clogs, such as broom handles, the handle of a rubber mallet and kicking the side of the hopper, using one's hands was the most commonly used technique by the operators of the

his right hand through the gap between the grate and the hopper, and, while he was pushing the product down the sides of the hopper, the ring and middle fingers on his right hand were pinched between the bottom of the hopper and the paddle wheel.  As a consequence, Forbes suffered the traumatic amputation of the last joint on each of those fingers.  He was able to pull his hand out of the hopper and seek medical assistance.[5]  Before that accident occurred, Plaintiff was aware of and understood the warnings on the side of the hopper to get body parts away from moving parts.  In addition, he was not told by any of the Defendant's management personnel to use his hands to clear the clogs in the hopper.

This case is now before the Court on the Defendant's Motion for Summary Judgment (Doc. #13).  As a means of analysis, this Court will initially set forth the procedural standards it must apply whenever it rules upon such a motion,[6] following which it will address the parties' arguments in support off and in opposition to the Defendant's motion.

_____

reblend hopper to clear clogs, while the gap between the grate and the side of the hopper existed.  No evidence has been presented demonstrating what was used to clear clogs before that gap appeared.

[5]After the accident, Plaintiff obtained workers' compensation.  Upon his return to work, he was given a number of light duty assignments.  In October, 2006, he returned to his former position as an operator of the reblend hopper, and remained so employed when his deposition was taken on February 28, 2007.

[6]In setting forth his view of those standards, the Plaintiff has cited a number of decisions by Ohio state courts.  See Doc. #18 at 9-11.  Those decisions are not applicable herein, because this Court must apply the procedural standards governing motions for summary judgment supplied by federal law, regardless of the source of the governing substantive law, when ruling on a motion for summary judgment.  See Hanna v. Plumer, 380 U.S. 460 (1965).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a

motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment …."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As indicated, the Plaintiff has set forth a workplace, intentional tort claim. In Fyffe v. Jeno's Inc., 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991),[7] the Ohio Supreme Court defined, in paragraph 1 of the syllabus, the "intent" necessary to support such a claim:[8]

> 1.  Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed. 1984), in order to

---

[7]Plaintiff has not argued, nor has he submitted evidence in support of the proposition that there is direct evidence of Defendant's intent to injure him. Accordingly, the Court concludes that the intentional tort claim must be established inferentially, in accordance with the Fyffe test.

[8]Of course, in addition to establishing intent, a plaintiff asserting a workplace, intentional tort claim must also establish proximate cause. See, e.g., Raines v. Rubbermaid, Inc., 112 Ohio App.3d 384, 678 N.E.2d 988, 991 (1996).

establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.  (Van Fossen v. Babcock & Wilcox Co. [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)

See also, Jandro v. Ohio Edison Co., 167 F.3d 309, 313 (6th Cir. 1999) (noting that Fyffe is "[t]he definitive Ohio case on the requirements for establishing an intentional tort claim against an employer").  In its Motion for Summary Judgment (Doc. #13), Defendant focuses exclusively on the second prong of the Fyffe test, without addressing its first or third prongs.[9]  In paragraph 2 of the syllabus of Fyffe, the Ohio Supreme Court elaborated upon the second prong of its test (i.e., that harm to the employee will be a substantial certainty):

2.  To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established.  Where the employer acts despite his knowledge of some risk, his conduct may be negligence.  As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness.  As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result.  However, the mere knowledge and appreciation of a risk-- something short of substantial certainty--is not [sufficient inferred] intent.  (Van Fossen v. Babcock & Wilcox Co. [1988], 36

_____

[9]Thus, it is not necessary for the Court to address the Plaintiff's arguments concerning the existence of a genuine issue of material fact relating to those two prongs of the Fyffe test.

Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)

59 Ohio St.3d at 115, 570 N.E.2d at 1110. For reasons which follow, this Court concludes that the evidence fails to raise a genuine issue of material fact concerning the question of whether Defendant knew that harm to the Plaintiff was a substantial certainty, if he worked at the reblend hopper, with its safety guard not being properly positioned.

Plaintiff argues that the evidence raises such a genuine issue of material fact, because he operated a reblend hopper without a properly positioned safety guard and the Defendant had not provided tools to unclog that machine. See Doc. #18 at 13-14. Although the evidence unquestionably supports the factual premise of the argument, this Court is not able to conclude that those facts are sufficient to raise a genuine issue of material fact on the question of whether Defendant knew that harm to the Plaintiff was a substantial certainty, if he worked at the reblend hopper.

In reviewing the grant of motions for summary judgment (or for directed verdict) on the second prong of the Fyffe test, Ohio appellate courts have generally held that the absence of substantially similar, prior accidents poses a serious impediment to a plaintiff's workplace, intentional tort claim. See e.g., Ford v. Complete Gen. Const. Co., 2006 WL 3805684 (Ohio App. 2006) (noting that "[e]stablishing the employer's knowledge of substantial certainty of harm is difficult where there are not prior accidents of a similar character") (internal quotation marks and citations omitted); Williams v. Advanced Engineering Solutions, Inc., 2005 WL 1799291 (Ohio App. 2005); English v. General Elec. Co., 2004 WL 2659251 (Ohio App. 2004); Gertz v. Nerone & Sons, Inc., 2002 WL

- **9** -

1728594 (Ohio App. 2002); Taulbee v. Adience, Inc., BMI, Div., 120 Ohio App.3d 11, 20, 696 N.E.2d 625, 631 (1997); Foust v. Magnum Restaurants, Inc., 97 Ohio App.3d 451, 455, 646 N.E.2d 1150, 1153 (1994) (holding that, while evidence of a lack of prior accidents, "standing alone, may not be conclusive, it strongly suggests, as in the instant action, that injury from the procedure was not substantially certain to result from the manner in which the job was performed"); Wehri v. Countrymark, Inc., 82 Ohio App.3d 535, 538, 612 N.E.2d 791, 793-794 (1992) (showing of no prior accidents evidencing a dangerous condition curtails plaintiff's intentional tort claim); Zink v. Owens-Corning Fiberglas Corp., 65 Ohio App.3d 637, 643-644, 584 N.E.2d 1303, 1307-1308 (1989) (holding that evidence showing lack of prior accidents negates daunting standard of substantial certainty and intentional tort).  In each one of those decisions, save and except Taulbee, the court held that the lack of similar previous accidents demonstrated the lack of a genuine issue of material fact on the substantial certainty prong of the Fyffe test, since there was an absence of additional evidence tending to show that the defendant had knowledge that, if its employee were subjected by his employment to a dangerous process, procedure, instrumentality or condition, then harm to the employee would be a substantial certainty.

Herein, there is no evidence that substantially similar accidents occurred.  On the contrary, despite the use of the reblend hopper, three shifts a day, seven days a week, since IFC had begun to operate the Urbana facility, the uncontroverted evidence establishes that no accident similar to that which caused the Plaintiff's injuries had occurred.  The Defendant argues that the lack of evidence of prior, similar accidents demonstrates that there is not a genuine issue of material fact

concerning the second prong of the second prong of the <u>Fyffe</u> test. This Court agrees with the Defendant.

An examination of decisions in which Ohio courts have concluded that there was a genuine issue of material fact on the second prong of the Fyffe test, despite the lack of prior, similar accidents, supports this Court's conclusion herein, because those lawsuits had additional factors supporting the proposition that the evidence raised such a genuine issue of material fact. For instance, in <u>Cook v. Cleveland Elec. Illuminating Co.</u>, 102 Ohio App.3d 417 657 N.E.2d 356 (1995), the Cuyahoga County Court of Appeals reversed the grant of summary judgment in favor of the plaintiff's employer on the second prong of the <u>Fyffe</u> test, even though there was no evidence of prior similar accidents, writing:

> The appreciation of danger can be obtained in a myriad of ways other than personal knowledge or previous injuries. Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If we were to accept the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. This is not the purpose of <u>Fyffe</u>. It is not incumbent that a person be burned before one knows not to play with fire.

<u>Id</u>. at 429-30, 657 N.E.2d at 364. In <u>Cook</u>, the plaintiff was injured when he was operating an electrical transfer. As a result of increased electrical rates charged by Cleveland Illuminating Company, the plaintiff's employer, Schloss Paving, installed a generator, which supplied some of its electrical needs. As part of his duties, the plaintiff was required to switch the power supply from the generator to that supplied by the utility. When he was performing that task, the two sources of electricity came in contact with each other, which resulted in a fire that caused the

plaintiff to suffer burns.  The trial court granted summary judgment, concluding that, in the absence of evidence that a similar accident had previously occurred, the employer was, as a matter of law, not substantially certain that harm would occur.  The Cuyahoga County Court of Appeals reversed, noting that there was evidence that a slight deviation in the procedures by which the switching operation was performed could cause such an incident to occur.  In addition, the employer's supervisor was aware that, if the procedures were not followed precisely, the two sources of electricity could come in contact and cause the type of incident which did, in fact, occur.  Indeed, the supervisor has designed and installed the transfer system, even though he was not a trained electrician.

In Taulbee, supra, the Franklin County Court of Appeals reversed the grant of summary judgment in favor of the defendant on the second prong of the Fyffe test, even though there was no evidence of prior, similar accidents.  Therein, the defendant had been employed to remove gunnite, a mixture of concrete and sand, and metal waste, such as reinforcing bar and metal lathe (collectively "lathe"), from the inside of large air handling units at the Gavin Nuclear Power Plant in Cheshire, Ohio.  The gunnite was removed with jack hammers, while acetylene cutting torches were used to remove the lathe.  The inside of the air handling units was completely dark.  As a consequence, workers, like the plaintiff, were completely dependent upon a string of lights.  It was common for the lights to go out, without warning, due to the practice of the defendant's employees to use the circuit reserved for the lights for other electrical equipment, which caused the lighting circuit to trip.

Due to height of the air handling units, several levels of scaffolding had to be erected for employees to use when removing the gunnite and lathe.  A supervisor directed the plaintiff and other employees to remove all but two of the eight-inch, scaffolding boards.  The removal of the boards made it easier for the gunnite and lathe to fall to the ground, thus rendering cleanup less time consuming and expensive.  The removal of the boards also gave the jackhammer operators a place to sit while removing gunnite.  However, as a result, a worker on the scaffolding had only two eight-inch boards upon which to balance himself.  As a result of the removal of the boards, there were a number of incidents, which occurred before the plaintiff was injured, in which defendant's employees, including members of its management, nearly fell from the scaffolding.

On the day that he was injured, the plaintiff was assigned to remove lathe from an interior wall of an air handling unit.  He was in the process of moving from one location to another on a scaffolding, on its two eight-inch boards, when the lights went out.  As a consequence, the plaintiff lost his balance and fell from the scaffolding.

Quite simply, cases such as <u>Cook</u> and <u>Taulbee</u> are factually distinguishable from this litigation.  In <u>Cook</u>, unlike the present lawsuit, the plaintiff's supervisor had designed and constructed an electrical transfer system, which he knew would cause an accident like that which the plaintiff had suffered, with any slight deviation from the switching procedure.  Moreover, the factors present in <u>Taulbee</u>, are not present herein.  Therein, although an accident similar to that suffered by the plaintiff had not occurred, there had been a number of incidents in which people almost fell from the scaffolding.  In addition, the appellate court therein

discounted the lack of other similar accidents, because, unlike this litigation, the scaffolding had not been in use very long.  In addition, there is no factor in this litigation, remotely similar to the lights going out without warning in <u>Taulbee</u>. Since those decisions like <u>Cook</u> and <u>Taulbee</u> are factually distinguishable, this Court concludes that the holdings therein, that, despite the lack of prior, similar incidents, the evidence raised a genuine issue of material fact on the second prong of the <u>Fyffe</u> test, are not applicable to this litigation.[10]

Moreover, neither of the factual bases, upon which Plaintiff relies to support his assertion that the evidence raises a genuine issue of material fact on the second prong of the <u>Fyffe</u> test (i.e., that he was operating a reblend hopper without a properly positioned safety guard and that the Defendant had not provided tools to unclog that machine), constitutes the type of additional evidence relied upon by the <u>Cook</u> and <u>Taulbee</u> courts to conclude that such a genuine issue of fact existed, despite the absence of previous, similar accidents.  As to the lack of such a tool, although the evidence unquestionably raises a genuine issue of material fact concerning the Defendant's failure to provide a tool to clear clogs in the hopper, the evidence does establish that employees, including the Plaintiff, used a variety of different methods to clear clogs, other than their hands.  In

---

[10]The Plaintiff also relies upon <u>Daily v. Eaton Corp.</u>, 138 Ohio App.3d 575, 741 N.E.2d 946 (2000).  Therein, the plaintiff, an electrician employed by the defendant, was injured as a result of a fire in a circuit breaker room, where previously he had manually reset a circuit breaker.  Defendant had a safety procedure, whereby the fire brigade, a group of specially trained employees, would fight fires at the plant until the local fire department arrived.  On the day that plaintiff was injured, he was assigned to respond to the fire, rather than the fire brigade or local fire department being called out.  Since the <u>Daily</u> court did not discuss the existence or absence of previous, similar incidents, this Court does not find the decision therein to be pertinent.

addition, the Plaintiff was never told by Defendant's management personnel to use his hands to clear clogs. Finally, he was aware of and understood warnings on the side of the hopper concerning the danger posed by moving parts. With respect to the lack of proper positioning of the safety guard, Ohio decisions do not support the proposition that the existence of safety equipment, damaged by the manufacturing process, in and of itself, raises a genuine issue of material fact on this question.[11]

Based upon the foregoing, this Court concludes that the lack of prior, similar accidents, without more, demonstrates, herein, that the evidence does not raise a genuine issue of material fact on the substantial certainty prong of the <u>Fyffe</u> test.[12] Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. #13). Judgment is to be entered in favor of the Defendant and against the Plaintiff.

---

[11]It bears emphasis that this is not an instance where an employer has intentionally removed safety equipment. Rather the guard over the opening to the hopper was shoved away from the edge as a result of bags of product, weighing 25 or 50 pounds, being continuously thrown on the grate over a period of time.

[12]Given that conclusion, it is not necessary to address the Defendant's alternative arguments that the evidence does not raise a genuine issue of material fact on the second prong of the <u>Fyffe</u> test, because: 1) Plaintiff disregarded an obvious risk; and 2) he was responsible for his decision to attempt to clear the clog in the reblend hopper in the manner he proceeded.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

March 12, 2008

/s/ Walter Herbert Rice
_____
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.